UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELIZABETH LIGHTFOOT, *et al.*,

   Plaintiffs,

     v.

DISTRICT OF COLUMBIA, *et al.*,

   Defendants.

Civil Action No. 01-1484 (CKK)

**MEMORANDUM OPINION**
(January 24, 2006)

     Currently before the Court are two motions arising from this Court's September 24, 2004 Opinion and Order relating to Plaintiff's Motion for Partial Summary Judgment, *Lightfoot v. Dist. of Columbia*, 339 F. Supp. 2d 78 (D.D.C. 2004), and this Court's January 28, 2005 Opinion and Order relating to the Government Defendants' Motion for Reconsideration, *Lightfoot v. Dist. of Columbia*, 355 F. Supp. 2d 414 (D.D.C. 2005).  Specifically, upon denial of the Government Defendants' Motion for Reconsideration, Defendants have brought a Motion for Partial Stay Pending Appeal requesting that "the Court [] stay only the reinstatement part of its Orders" but not the other relief ordered by the Court – i.e., "retroactive relief (referred to mediation), the remand for promulgation of regulations governing terminations, modifications, and suspensions, or the requirement that the Program halt terminations of claims[] and suspensions and modifications [of] benefits, pending the promulgation of regulations."  Defs.' Mot. for Stay at 1.  Plaintiffs have opposed this motion, and have brought their own Motion for a Status Conference to discuss developments in this action since the last status conference before this Court on March 31, 2005.

     Upon a searching consideration of these filings, the relevant Responses and Replies, the attached exhibits, and the entire record herein, the Court shall (1) deny the Government Defendants'

Motion for a Stay Pending Appeal, and (2) shall grant Plaintiffs' Motion for a Status Conference.

## I: BACKGROUND

Plaintiffs in the above-captioned action are a class of current or former District of Columbia employees whose disability compensation benefits were terminated, suspended, or modified by District of Columbia officials.[1]  Plaintiffs' Third Amended Complaint alleges, *inter alia*, that Defendants' failure to adopt written and consistently applied standards, policies, and procedures governing the termination, suspension, and modification of Plaintiffs' disability compensation benefits violated the Due Process Clause of the United States Constitution, and that Defendants' implicit adoption of such rules without publishing notice in the District of Columbia Register and without public comment contravened the strictures of the District of Columbia Administrative Procedure Act ("DCAPA").  Plaintiffs moved for partial summary judgment as to the two counts within their Third Amended Complaint making these arguments -- a motion that the Court granted in its September 24, 2004 Opinion and Order.  *Lightfoot*, 339 F. Supp. 2d at 97.  Rather than moving for a stay or appealing the Court's decision, Defendants instead moved for a reconsideration and/or clarification of the Court's September 24, 2004 ruling.  The Court, on January 28, 2005,

---

[1] The named Plaintiffs represent a class that constitutes:

> All persons who have received or will receive disability compensation benefits pursuant to D.C. Code § 1-623.1, *et seq.* and whose benefits have been terminated, suspended or reduced since June 27, 1998 or whose benefits may be terminated, suspended or reduced in the future. "Disability compensation benefits" is defined to exclude a scheduled award provided in D.C. Code § 1-623.7 expiring at the end of the statutory term, continuation of pay provided in D.C. Code § 1-623.18(a) expiring at the end of the statutory term, funeral expenses provided in D.C. Code § 1-623.34, a fully paid lump sum settlement provided in D.C. Code § 1-623.35, and credited compensation leave provided in D.C. Code § 1-623.43.

*Lightfoot*, Civ. No. 01-1484, at 4 (D.D.C. Jan. 14, 2004) (memorandum opinion and order granting plaintiffs' motion for class certification).

issued an Opinion and Order that concluded that (1) the legal findings underpinning its September 24, 2004 Opinion and Order did not exceed constitutional requirements, (2) the Disability Compensation Program's procedures were clearly "rules" within the meaning of the DCAPA and had to be promulgated through notice-and-comment rule-making, and (3) the remedy ordered by the Court was proper. *Lightfoot*, 355 F. Supp. 2d at 428-29, 429-436, 436-441.[2] The Court further clarified its September 24, 2004 Opinion and Order and addressed the scope of class members who must be immediately reinstated to the Program. *Id.* at 442.[3]

Immediately following the Court's January 28, 2005 Opinion and Order, two events conspired to stymie the progress of this lawsuit. First, Plaintiffs' filed a Motion for Clarification of Amendment of the Court's January 28, 2005 Opinion and Order that questioned the exclusion of

---

[2] The Court, in the remedy section of its September 24, 2004 Opinion, ordered "that the disability compensation benefits, both cash and medical, of all members of the Plaintiff class be reinstated as of the date of this Opinion and Order [September 24, 2004], until individualized termination, modification, or suspension determinations may be made under validly promulgated rules." *Lightfoot*, 339 F. Supp. 2d at 96.

[3] Specifically, the Court found that the

> prospective relief ordered should *not* be read to cover: (1) deceased class members who, while they may still be entitled to retroactive compensatory damages, are not eligible for continuing benefits under D.C. Code § 1-623.02, *see* Pls.' Mem. in Opp'n to Gov't Defs.' Mot. to Reconsider at 26 (Plaintiffs consent to this exclusion); (2) individuals who have been *upwardly* modified, and therefore lack standing under *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) -- meaning that the Court's references to "modification" apply in practice to "reduction"; and (3) current employees who have returned to work, and therefore are not likely to accept such temporary benefits pending Government Defendants' compliance in lieu of their salaries, *see* Pls.' Opp'n to Gov't Defs.' Mot. to Stay (Plaintiffs do not object to this exclusion). However, the September 24, 2004, reinstatement remedy still applies to class members who are otherwise eligible even if those claimants sought review of termination decisions on reconsideration or appeal.

*Lightfoot*, 355 F. Supp. 2d at 442.

certain class members who remain eligible for possible retrospective relief from the prospective relief awarded by the Court. Second, Government Defendants, perhaps construing the Court's September 24, 2004 Opinion and Order -- which voided the Program's unpublished policies, remanded for further rule-making, and reinstated the disability compensation benefits of certain eligible class members -- as a type of preliminary injunction, filed an interlocutory appeal of the Court's two decisions with the Court of Appeals for the District of Columbia on or about February 24, 2005. Importantly, the Government Defendants did not ask that their appeal to the Court of Appeals be expedited, and oral argument will not occur until February 10, 2006 – nearly seventeen months after the Court's initial reinstatement order. *See* Defs.' Consent Mot. to Enlarge *Nunc Pro Tunc* Time to Respond to Pls.' Third Am. Compl. at 1.

Concerned about the effect of Government Defendants' appeal on proceedings in this Court, the Court ordered the parties to show cause as to why certain motions related to the Court's twin orders should not be stayed pending resolution of the Court's rulings by the Court of Appeals for the District of Columbia. Government Defendants then filed a Motion for Partial Stay Pending Appeal on March 15, 2005, asking that this Court stay the enforcement of the reinstatement portion of its orders until appellate adjudication -- a motion to which Plaintiffs filed an Opposition and Government Defendants entered a Reply.[4] Due to the fact that Government Defendants' Motion for Partial Stay was based, to a large extent, on an argument that the prospective reinstatement of certain class members would cause irreparable economic injury to the District of Columbia, Gov't Defs.' Mot. for Partial Stay at 5-6, Gov't Defs.' Reply at 1-6, Plaintiffs sought to test the

---

[4] The Government Defendants did not move in the D.C. Circuit for a stay of this Court's September 24, 2004 Opinion and Order or this Court's January 28, 2005 Opinion and Order regarding reconsideration.

Government Defendants' financial assertions by filing a Motion to Compel Discovery that requested that Government Defendants produce Ms. Pamela Brown, the Claims Manager for the Office of Risk Management, for a deposition and certain documents relevant to her multiple Declarations in this case.  In response, Government Defendants filed a Motion for Protective Order Regarding Deposition Notice to Pamela Brown, arguing that "[t]he deposition sought by plaintiffs is altogether unnecessary, and threatens the Government defendants and Ms. Brown with annoyance, as well as undue burden and expense."  Gov't Defs.' Mot. for Protective Order at 2.  Plaintiffs then filed an Opposition to the Government's Motion for a Protective Order and a Reply in Support of their Motion to Compel Discovery.

The Court held a status conference on March 31, 2005, in order to discuss the issues relating to the spate of post-January developments in this case.  In its discussions with counsel at the hearing, the Court gave some indication as to the likely resolution of the myriad of motions currently before it.  On May 1, 2005, the Court entered a ruling that (1) denied Plaintiffs' Motion for Clarification or Amendment of the Court's January 28, 2005 Opinion and Order; (2) held in abeyance its consideration of the Government Defendants' Motion for a Partial Stay Pending Appeal; (3) granted Plaintiffs' Motion to Compel Discovery; and (4) denied Government Defendants' Motion for a Protective Order Regarding Deposition Notice to Pamela Brown.  *See Lightfoot v. Dist. of Columbia*, Civ. No. 01-1484 (D.D.C. May 1, 2005) (memorandum opinion and order denying motion for clarification, granting motion to compel, and denying motion for protective order).  The Court specifically noted that "[a]fter Plaintiffs take Ms. Brown's deposition and are provided access to certain documents, this Court shall allow the parties to supplement their filings related to the Government Defendants' Motion for a Partial Stay Pending Appeal in order to allow the Court to decide the issue with a full, informed record."  *Id*. at 2.

Both parties took up the Court's offer to file supplemental pleadings follow Ms. Brown's deposition on May 20, 2005. On May 27, 2005, Plaintiffs filed a Supplemental Memorandum in Opposition to the Government Defendants' Motion to Stay, which severely criticized the Government's estimation of both the class size and the cost of providing both notice and reinstatement to applicable class members. Following a delay, the Government Defendants filed a Reply to the Plaintiffs' Supplemental Memorandum on June 10, 2006.[5] On December 1, 2005, Plaintiffs filed a Motion for a Status Conference in this action, informing the Court of further developments in this case relevant to the pending Motion for a Partial Stay, to which the Government Defendants filed an Opposition on December 12, 2005, and Plaintiffs entered a Reply on December 19, 2006.

## II: LEGAL STANDARDS

The following factors are to be considered when determining whether a stay pending appeal is warranted:

> (1) likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the Court grants the stay; and (4) the public interest in granting the stay. To justify the granting of a stay, a movant need not always establish a high probability of success on the merits. Probability of success is inversely proportional to the degree of irreparable injury evidenced. A stay may be

---

[5] On June 1, 2005, the Government Defendants filed a Motion to Enlarge Time to Respond to the Plaintiffs' Supplemental Memorandum, asking that the Court extend the Reply date from June 3, 2005 to June 10, 2005, given that the Assistant Attorney General assigned to this case resigned on May 26, 2005, leaving the Government's counsel with little time to gain familiarity with this suit and the issues involved. Plaintiffs opposed this motion on June 2, 2005, asserting that this was more evidence of the Government's consistent foot-dragging in this case, while the Government Defendants filed a Reply on June 3, 2005. The Court, understanding the circumstances involved and the minimal prejudice resulting from a one-week expansion of the Reply date, shall grant Government Defendants' Motion to Enlarge and shall consider the Government Defendants' Supplemental Reply with respect to the arguments flowing from the Motion for Partial Stay Pending Appeal.

granted with either a high probability of success and some injury, or *vice versa*. *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985) (per curium); *United States v. Phillip Morris Inc.*, 314 F.3d 612, 617 (D.C. Cir. 2003); *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977); *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958); *see also D.C. Circuit Handbook of Practice and Internal Procedures* Part VIII(a) (2003).

Importantly, it is "the movant's obligation to justify the court's exercise of such an extraordinary remedy." *Cuomo*, 772 F.2d at 978; *see also Twelve John Does v. District of Columbia*, Civ. A. No. 80-2136, 1988 WL 90106, at *1 (D.D.C. Aug. 4, 1988) ("An indefinite stay pending appeal is an extraordinary remedy, and is to be granted only after careful deliberation has persuaded the Court of the necessity of the relief.") (citing *Virginia Petroleum Jobbers*, 259 F.2d at 925). "This Circuit has recently reiterated that the applicant must satisfy 'stringent standards required for a stay pending appeal.'" *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 230 F. Supp. 2d 12, 14 (D.D.C. 2002) (citing *Summers v. Howard Univ.*, Civ. A. No. 02-7069, 2002 WL 31269623 (D.C. Cir. Oct. 10, 2002)). Where a moving party fails to establish a substantial case on the merits, and further fails to "demonstrate that the balance of equities or the public interest strongly favor the granting of a stay," a motion for stay is properly denied. *Cuomo*, 772 F.2d at 972.

### III: DISCUSSION

The Court shall review the Government Defendants' arguments in favor of a stay under the traditional four-prong analysis set out in numerous D.C. Circuit cases, looking first at (1) the Government Defendants' likelihood of victory on the merits, and then turning to (2) the likelihood

the Government Defendants will be irreparably harmed absent a stay, (3) the prospect that others will be harmed if the Court grants the stay, and (4) the public interest in granting a stay. Upon an analysis of these factors in the context of the circumstances of this case, the Court concludes that the Government Defendants have failed to meet any of the factors necessary to substantiate the extraordinary judicial relief of a stay. As such, the Court shall deny the Government Defendants' Motion for a Partial Stay Pending Appeal. Rather, the Court directs that the Government should follow Shakespeare's maxim: "Let's lack no discipline, make no delay: For lords, tomorrow is a busy day." William Shakespeare, *Richard III*, Act v., Sc. 3 , line 17-18.

    *A.    Likelihood of Victory on the Merits*

In their Motion for a Partial Stay Pending Appeal, the Government Defendants – perhaps realizing that the Court has twice rejected their position – spend minimal time seeking to establish a substantial likelihood of victory on the merits. Rather, cross-referencing only their previous briefing at the Motion for Reconsideration stage regarding the Supreme Court's decision in *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), the Government Defendants effectively concede this point, retreating to an argument that "even if the likelihood of our success on the merits is less than substantial, which we do not believe, we face near-certain, significant injury in the form of huge, largely unrecoverable expenses if the Court's Orders are not stayed as we have requested." Defs.' Mot. for Partial Stay at 4.

As such, the Court here is faced with a situation where the movant – the Government Defendants – "has offered no new arguments in its motions, but rather rehashes arguments that have been rejected . . . ." *United States v. Judicial Watch, Inc.,* 241 F. Supp. 2d 15, 16 (D.D.C. 2003), *cert. denied*, No. 03-5019, 2003 WL 1089413, at *1 (D.C. Cir. Mar. 6, 2003); *see also United States v. Herbert Bryant, Inc.*, Civ. Nos. 73-2211, 73-1903, 1990 WL 102790, at *2 (D.D.C. July

9, 1990) ("In moving for reconsideration and in seeking a stay and/or injunction, [movant] has failed to present anything that would suggest that the decision reached by the Court is in error."); *Shays v. Fed. Election Comm'n*, 340 F. Supp. 2d 39, 46 (D.D.C. 2004) (Kollar-Kotelly, J.) (same), *aff'd*, 414 F.3d 76 (D.C. Cir. 2005).  Indeed, a review of this Court's decision on the Government Defendants' reconsideration motion reveals the clear error in their reliance on *Carey*, including three central differences.  *See Lightfoot*, 355 F. Supp. 2d at 438-441.  First, unlike the situation in *Carey*, the Court's reinstatement order "is equitable and prospective – it is not a compensatory damages remedy.  The remedy undoes the Government Defendants' illegal acts and requires reinstatement of benefits as of the date of the Order, but makes no finding or presumption regarding entitlement to benefits before that time."  *Id*. at 439.  The Court did not set a dollar amount owed by Defendants; rather, it merely voided "the unconstitutional system and place[d] Plaintiffs in the same position had the constitutional violation not occurred."  *Id*.  Second, to the extent that the Court's remedy could be construed as "retrospective," the Court's ruling was consistent with a myriad of precedents, including both the Seventh Circuit's ruling in *Patterson v. Portch*, 853 F.2d 1399 (7th Cir. 1988) (Posner, J.), and the Eighth Circuit's holding in *Brewer v. Chauvin*, 938 F.2d 860 (8th Cir. 1991).  *Lightfoot*, 355 F. Supp. 2d at 439-40 (citing numerous other cases and treatises).  Third, such reinstatement remedies are commonplace under the DCAPA, whose principles the Government Defendants have consistently avoided in this litigation.  *Id*. at 440-41 (citing numerous cases).

"Given the wealth of precedent and the parameters of the Court's remand," *id*. at 441, the Court concludes that the Government Defendants have failed to establish a substantial likelihood of victory on the merits upon appeal; indeed, the Court finds that the Government Defendants have failed to make out a "substantial case on the merits" and have not presented "questions going to the

merits so serious, substantial, difficult and doubtful" to necessitate a stay. *Holiday Tours*, 559 F.2d at 843, 844 (quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953)).

  *B.*  *Irreparable Harm*

"Under this Circuit's precedent, the harms to each party are tested for 'substantiality, likelihood of occurrence, and adequacy of proof.'" *Judicial Watch v. Nat'l Energy Policy Dev. Group*, 230 F. Supp. 2d 12, 15 (D.D.C. 2002) (quoting *Cuomo*, 772 F.2d at 976-77). "The Court must consider the significance of the change from the *status quo*, which would arise in the absence of a stay, as well as likelihood of occurrence of the claimed injury, when determining whether defendants have truly met their burden of demonstrating irreparable harm justifying imposition of a stay." *Id.* As the D.C. Circuit has outlined, the moving party must establish that (1) "the injury must be both certain and great; it must be actual and not theoretical," *Wisconsin Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985); (2) "'[t]he injury complained of [is] of such *imminence* that there is a 'clear and present' need for equitable relief to prevent irreparable harm,'" *Id.* (quoting *Ashland Oil, Inc. v. Fed. Trade Comm'n*, 409 F. Supp. 297, 307 (D.D.C. 1976), *aff'd*, 548 F.2d 977 (D.C. Cir. 1976)) (emphasis in original); and (3) substantial unrecoverable economic harm, given the fact that "economic loss does not, in and of itself, constitute irreparable harm"; rather, "'[t]he possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm,'" *id.* (quoting *Virginia Petroleum Jobbers Ass'n*, 259 F. 2d at 925).

Using the figures outlined by Pamela A. Brown, Claim Supervisor in the District of Columbia's Office of Risk Management and the individual responsible for the oversight of the

Disability Compensation Program, *see* Defs.' Mot. for Partial Stay, Ex. 1 (Third Brown Decl.) ¶ 3, the Government Defendants initially claimed that they met all three factors of the test outlined in *Wisconsin Gas*. Defs.' Mot. for Partial Stay, at 5-6. Specifically, the Government Defendants asserted that:

> *First*, in the absence of a stay, the Government defendants face huge, largely unrecoverable costs, estimated at $22 to 27 million. *Second*, as the process of reinstatement progresses, the costs identified will be unavoidable, hence there is a clear and present need for relief to prevent it. *Third*, though the Government defendants's imminent injury is financial in nature, their costs would be both massive and largely unrecoverable, even if they ultimately prevail on their appeal.

*Id*. at 5. The Government Defendants' figure of $22-27 million, cited to frequently in their Motion for a Partial Stay, comes from Ms. Brown's estimate that the total Plaintiff class, prospective and retrospective, would constitute approximately 3,000 individuals, while the class members covered by the Court's September 24, 2004 and January 28, 2005 reinstatement orders would be between 2,100 and 2,550 people. *See, e.g.*, Defs.' Mot. for Partial Stay, Ex. 1 (Third Brown Decl.) ¶¶ 14, 17, 20. It is worth noting that Ms. Brown's figures were significantly lower than the Government Defendants' counsel's estimate of 4,300 class members announced in their May 2, 2005 Motion to Enlarge Time to Comply with the Court's April 11, 2005 Order (entered by Magistrate Judge John Facciola).

However, Ms. Brown's estimates of the class covered by the Court's orders also differ significantly from the Beale database, which was compiled from a review of closed Disability Compensation Program case files completed "long ago" and was intended to accurately solve the size and identification of all class members covered by the Court's twin orders. *See* Pls.' Opp'n, Ex. 5 (Apr. 25, 2005 email from Clayton White, of BEALE, Inc., to Phyllis Dailey, Claims Bureau Manager, District of Columbia Office of Risk Management). The Beale database shows only 578

class members whose disability compensation benefits were terminated, suspended, or modified since July 27, 1998. *Id.*, Ex. 6 (Excerpt of Beale database with all "terminated," "modified," and "suspended" entries). At her deposition on May 20, 2005, Ms. Brown was unable to explain the difference between her estimate and the Beale results. *Id.*, Ex. 1 (May 20, 2005 Brown Dep.) at 49; *see also id.* at 29:16 (Ms. Brown retreats, explaining "I gave a good guess."). Rather than accept the Beale database figures as definitive, Plaintiffs have raised significant, unrefuted questions about the accuracy of the Beale database results (in addition to their concerns regarding Ms. Brown's guesswork). Specifically, Plaintiffs' concerns regarding the accuracy of the Beale database include claims of (1) inadequacies surrounding the instructions provided to third-party contractor Beale when assigned its task of culling through files to identify class members by the District of Columbia, Pls.' Opp'n at 6, n.7 (citing *id.*, Ex. 1 (May 20, 2005 Brown Dep.) at 33-35; *id.*, Ex. 5 (Brown Memo)); (2) lack of supervision over Beale by the Government, *id.* (citing *id.*, Ex. 1 (May 20, 2005 Brown Dep.) at 72-73); (3) a Government audit showing a 20% error rate in a sample of entries provided by Beale, *id.* (citing *id.*, Ex. 1 (May 20, 2005 Brown Dep.) at 78-80); (4) questions whether Beale reviewed the files again or conducted an internal audit, *id.*; and (5) glaring inconsistencies between the total terminations identified by the Government to Councilmember Orange, *see id.*, Ex. 9 (Letter to Councilmember Orange identifying 1,400 terminations of benefits in 2002 and more than 2,000 in 2003), and the scope of the class identified by Beale. Indeed, as Plaintiffs have pointed out, of the 68 class members known to Plaintiffs, 50 do not appear on the Beale database class list – an error rate of approximately 74%, assuming the accuracy of Plaintiffs' representations, which the Government Defendants do not contest. *See* Pls.' Reply in Supp. of Pl.'s Mot. for Status Conf. at 2.

Perhaps realizing the fundamental inaccuracies of both Ms. Brown's previous estimates, which were relied upon in their initial Motion for a Partial Stay, and the Beale database, the Government Defendants have back-tracked, announcing that "even if only a small fraction of our estimate turned out to be correct, . . . defendants' motion for a stay would still be warranted." *See* Defs.' Opp'n to Pls.' Mot. for Status Conf. at 4.  Plucking a figure out of absolutely nowhere, with no basis in reality – "assuming a mere 300 of the class members are eligible for reinstatement" – the Government Defendants in their Reply contend that this "most conservative estimate . . . would leave the Government defendants with an *unrecoverable* loss of at least $1,321,590" – a significant departure from the $22-27 million initially cited.  *See* Defs.' Reply at 3, 5-6.  This figure would include the costs of providing notice to class members, the cost of temporary claims adjusters, administrative costs, and reinstatement costs.  *Id.* at 5-6.  The Court notes that virtually none of these costs – outside of administrative expenses – have actually been incurred due to the serious questions over the accuracy of the Government Defendants' database outlining the scope of Plaintiffs' class.  Indeed, as of the date of this Opinion, (1) no class member has been provided notice regarding potential claims by the Government Defendants, and (2) no class member identified by this Court in its Orders has witnessed a reinstatement of their disability compensation benefits.

Ultimately, these major issues regarding the scope of Plaintiffs' class and the accuracy of the Government Defendants' methodology necessitate another status conference in this case (1) to clarify the present record, and (2) to make any progress in the ultimate resolution of the issues underlying this suit.  However, the Government Defendants various, wildly conflicting monetary estimates do lend themselves to one definite conclusion:  the Government Defendants cannot establish "irreparable harm" as required to necessitate the imposition of a stay.  First, real questions about the accuracy and size of the Government Defendants' anticipated harm undermine their claim.

*See, e.g., Cuomo*, 772 F.2d at 976 (finding no irreparable harm where movant had only "vaguely sketched the contours" of the harm anticipated); *Wisconsin Gas*, 758 F.2d at 674 (injury must be "certain and great"); *see also Am. Bioscience, Inc. v. Thompson*, 141 F. Supp. 2d 88, 97 (D.D.C. 2001) (finding that "vague and unsubstantiated speculation" and "utter lack of precision" defeated movant's claims of harm).

Second, as the D.C. Circuit has stressed, "'money, time and energy necessarily expended in the absence of a stay'" – even if "'substantial'" – are "not enough" by themselves to justify the imposition of a stay. *Wisconsin Gas*, 758 F.2d at 674 (quoting *Virginia Petroleum Jobbers Ass'n*, 259 F.2d at 925); *see also Shays*, 340 F. Supp. 2d at 48-49. As such, the administrative costs incurred – and to be incurred by the Government Defendants – in the absence of a stay while the District of Columbia attempts to accurately determine the parameters of and individuals within the Plaintiff class are not sufficient to justify the imposition of a stay in this case. Here, these costs are the only costs that have been incurred by the Government, and, given the questions surrounding the accuracy of the Government Defendants' efforts, these are likely to be the only costs for the near-future.[6] Moreover, the Court notes that these administrative costs needed to identify the parameters of the Plaintiff class are not necessarily a product of the Court's September 24, 2004 Opinion and its January 28, 2005 Reconsideration Opinion. Rather, these costs flow from both (1) the Court's January 14, 2004 Opinion and Order certifying Plaintiffs as a class pursuant to Federal Rule of Civil Procedure 23(b)(2) and (2) the normal expenses incurred during the litigation of a class-action suit. Accordingly, many of the expenses focused upon by the Government Defendants as a

---

[6] Apparently, the Government incurred $118,000 in costs to Beale, Inc. for its services, a large portion of which included expenses for the completion of a database of claimants outside of Plaintiffs' class. *See* Pls.' Suppl. Mem., Ex. 3 (May 17, 2005 email from Kelly Valentine); *id.*, Ex. 4 (Contract Change Order).

...

justification for a partial stay pending appeal of the Court's September 24, 2004 decision are not related to that ruling, and are not properly considered for the purposes of "irreparable harm."[7]

Third, courts within the District of Columbia have regularly found that relatively modest losses are insufficient to meet the standards required for "irreparable injury."  In the corporate context, for example, "[r]ecoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business."  *Wisconsin Gas*, 758 F.2d at 674 (citing *Holiday Tours*, 559 F.2d at 843 n.2); *see also Varicon Int'l v. Office of Personnel Mgmt.*, 934 F. Supp. 440, 447-48 (D.D.C. 1996) (finding no irreparable harm due to lost contract where movant's revenue would decline by 10%); *Bristol-Myers Squibb Co. v. Shalala*, 923 F. Supp. 212, 220-21 (D.D.C. 1996) (finding no irreparable harm where movant would lose $80 million dollars, less than 1% of its total sales); *TGS Tech., Inc. v. United States*, Civ. No. 92-0062, 1992 U.S. Dist. LEXIS 195, at *10 (D.D.C. Jan. 14, 1992) (finding no irreparable harm where lost contract constituted 20% of movant's business).  In this case, where there is a proposed government budget of $4.903 billion from local funds and a projected accumulated surplus of $1.219 billion, *neither* figure cited by the Government Defendants ($1.3 million or $22-27 million) – virtually none of which has actually been expended yet by the Government – is sufficient to meet the standards necessary to establish "irreparable injury."  *See* Letter from D.C. Chief Financial Officer to Mayor Williams, *available at* http://www.dc.gov/mayor/budget_2006/transmittal_letters.shtm (stating that 60% of reserves are available for appropriation); Lori Montgomery & Eric M. Weiss, *Williams Steers Cash to Renewal*, WASHINGTON POST, Mar. 24, 2005, at A1.

---

[7] Other costs, such as providing notice to class members, might be properly considered for "irreparable harm" analysis.  However, given the existing problems with the class list developed by the Government Defendants, notice has not been provided to any class member, and is not an expense likely to be incurred for several months.

Fourth, and finally, while a minor point, it is worth mentioning that upon receiving the Court's September 24, 2004 Opinion and Order directing that certain class members be prospectively reinstated, the Government Defendants did not appeal this case to the D.C. Circuit or ask for a stay; rather, they filed a Motion for Reconsideration. The Court then denied that motion on January 28, 2005, yet the Government Defendants did not appeal to the D.C. Circuit until on or about February 24, 2005. Once they did appeal this case, the Government Defendants did not ask for an expedited appeal despite the fact that they now claim "irreparable injury" in the form of constantly accruing monetary expenditures flowing from the Court's Order. Accordingly, the D.C. Circuit will not hear oral argument until February 10, 2006 – roughly seventeen months after the Court's first major memorandum opinion and order in this case. Moreover, Government Defendants, despite their appeal, still did not request a partial stay pending appeal in this case until March 15, 2005, spurred on in part by the Court's March 1, 2005 Minute Order that sought to stay certain motions pending the D.C. Circuit's review. In reviewing this history, it is clear that despite numerous opportunities to either (1) expedite the appeals process in order to limit the possible damages faced or expenditures incurred, or (2) halt the process flowing from this Court's September 24, 2004 Opinion and Order, the Government Defendants have dragged their feet. Their actions – or relative inaction – indicate that they themselves do not perceive the possible injury as "irreparable." In contrast, a party that truly believed "irreparable injury" was imminent would have either immediately filed an expedited appeal of the Court's September 24, 2004 Order and/or filed a Motion for a Stay concurrent with a Motion for Reconsideration. Government Defendants here chose neither course, thereby failing to mitigate "damages" and highlighting the relatively minor nature of the expenditures incurred and faced.

Based upon these considerations, the Court concludes that the Government Defendants have failed to show that irreparable injury is "likely" absent a stay.  The Court realizes that the Government Defendants may have to expend previously unanticipated funds to correct the District's previous Disability Compensation Program, given the Program's constitutional infirmities and its failure to comply with the dictates of the DCAPA.  The Court is cognizant that the reinstatement of monies to the class members identified by the Court does take funds away from other needed programs within the District.  However, given the scope of the prospective class designated by the Court, *see Lightfoot*, 355 F. Supp. 2d at 442, only those individuals most in need would see their benefits immediately reinstated.  The Government Defendants simply cannot establish "irreparable injury" given serious questions regarding the accuracy of their estimates, the fact that no funds – other than minor administrative costs – have been expended or are likely to be expended for several months, and the relatively minor economic injury faced.

    C.    *The Prospect Others Will Be Harmed By a Stay*

In considering a motion for a stay pending appeal, the Court is also to consider the prospect of harm to others that would result from a stay.  As with irreparable harm to the movant, the Court is to test these harms for substantiality, likelihood of occurrence, and adequacy of proof.  *Cuomo*, 772 F.2d at 977 (citing *Wisconsin Gas*, 758 F.2d at 674).

The Government Defendants, in their Motion for a Partial Stay, acknowledge that such a stay would cause Plaintiffs injury, but claim that "[t]he requested stay is unlikely to cause plaintiffs significant harm, much less substantial harm required by law."  Defs.' Mot. for Partial Stay at 7. The Government Defendants focus on the idea that because the Court invalidated the Disability Compensation Program's rules "not because they were substantially insufficient" (a question that was not before the Court on Plaintiffs' Motion for a Partial Summary Judgment) "but, in sum,

because they were unwritten and not issued as regulations," then it is likely that a re-review of the class members' claims under the new regulations would establish "that the vast majority would receive the same outcomes as the Program actions (terminations, modifications, and suspensions) that brought them within the class definition." *Id*.

The Court notes three points. First, in their motion, the Government Defendants incorrectly attempt to place the burden of proof on Plaintiffs, the non-moving party. *See* Defs.' Mot. for Partial Stay at 7 (contending that the requested stay will not cause Plaintiffs the "substantial harm required by law"). Rather, the burden is on the moving party to demonstrate a need for an extraordinary judicial remedy such as a stay. *See Phillip Morris*, 314 F.2d at 617; *Cuomo*, 772 F.2d at 974. Accordingly, it is the Government Defendants' responsibility to show either that Plaintiffs will not suffer harm from a stay, or that any resulting harm will be minimal; Plaintiffs are not required to show "substantial harm" in order to prevent a stay.

Second, Government Defendants' certainty of the correctness of their previous decisions made pursuant to unwritten "best practices" ignores that the prior actions were unconstrained by written standards and, consequently, virtually immune from challenge. As the Court has noted, "none of the documents – containing only a patchwork of statements from which inferences may be drawn – meaningfully constrain the discretion of Program officials on any relevant issue." *See Lightfoot*, 355 F. Supp. 2d at 432-33. Simply, where no standards exist, infallibility cannot be assumed. Indeed, the Court has emphasized that "[w]ritten standards are the most important and valuable check against the potential for arbitrary administration: they act as explicit, bedrock guides for the actions of decisionmakers and ensure that benefit programs are administered in a consistent and transparent manner." *Lightfoot*, 339 F. Supp. 2d at 90. When combined with the potential for erroneous deprivations that attends the failure to provide adequate notice and opportunity to respond

under *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), recognized by this Court in its October 29, 2001 Memorandum Opinion, the Government Defendants' failure to promulgate written rules might well lead to a significant number of erroneous deprivations.

Third, the Court further emphasizes Chief Justice Taft's maxim that "Delay works always for the man with the longest purse." William Howard Taft, Chief Justice of the United States Supreme Court and former President, Adequate Machinery for Judicial Business, Informal Address Before the Judicial Section of the American Bar Association (Aug. 30, 1921), *in* AMERICAN BAR ASSOCIATION JOURNAL, Sept. 1921, at 453.  We are now into the fifth year of this case, and despite findings by this Court that Plaintiffs' class was confronted with a Disability Compensation Program that was both constitutionally infirm and in violation of the DCAPA, we still do not know (1) the extent of the Plaintiff class; and (2) the membership of the Plaintiff class.  No member of the Plaintiff class has seen their disability compensation benefits properly reinstated, and no member has experienced a full and fair review of their claims under an adequate system.  As outlined in the Court's January 28, 2005 Opinion, the Court's prospective reinstatement order applies only to a small subsection of the larger Plaintiff class – i.e., the individuals most in need of compensation benefits and medical programs.  The Government Defendants' repeated delays and foot-dragging in this litigation has endangered the welfare of these individuals; indeed, the Government Defendants' deficient Program has caused these individuals significant harm – harm that continues to accrue each day the Government fails to redress the problems underlying its system and provide needed reinstatement.  As such, given the factors described above, the Court concludes that a stay would cause significant harm to some – and perhaps all – members of the Plaintiff class.

    D.    *Public Interest*

"Of the four factors relevant to a decision on a motion for stay, the calculation of the public

interest is perhaps the most difficult" given the competing ends of limiting possibly unnecessary taxpayer expenditures from the public treasury and compensating injured parties in a time-sensitive manner. Indeed, in this case, the Plaintiff class consists of either former or current District of Columbia employees, many of whom reside in the District and are taxpayers, and many of whom have been – or currently remain – disabled. Given these unresolved, weighty, and competing interests, the Court concludes that the Government Defendants cannot meet their burden of establishing that the public interest is in favor of a stay. Because the Government Defendants have not established this or any other prong of the four-part analysis accompanying a motion for a stay, the Court must deny Government Defendants' Motion for a Partial Stay Pending Appeal.

### IV: CONCLUSION

For the reasons set forth above, the Court shall deny the Government Defendants' Motion for a Partial Stay Pending Appeal, shall grant *nunc pro tunc* the Government Defendants' Motion to Enlarge Time to Respond to Plaintiffs' Supplemental Memorandum in Opposition to the Government Defendants' Motion for a Partial Stay, and shall grant Plaintiffs' Motion for a Status Conference. An Order accompanies this Memorandum Opinion.

Date:   January 24, 2006

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　*/s/*
　　　　　　　　　　　　　　　　　　　　　　　　　COLLEEN KOLLAR-KOTELLY
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge