UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELIZABETH LIGHTFOOT, *et al.*,

    Plaintiffs,

      v.

DISTRICT OF COLUMBIA, *et al.*,

    Defendants.

Civil Action No. 01-1484 (CKK)

**MEMORANDUM OPINION**
(November 15, 2007)

Currently pending before the Court is the [342] Motion to Decertify the Class filed by

Defendant, the District of Columbia (hereinafter the "District"). In addition, at the Court's

request, Plaintiffs filed supplemental briefing clarifying the nature of the relief they seek in this

action in light of the substantial narrowing of their claims by this Court and the United States

Court of Appeals for the District of Columbia Circuit. Both the District's initial Motion to

Decertify and the supplemental briefing requested by the Court are now ripe for consideration.

Upon a searching review of the filings submitted by both parties, the relevant statutes and

caselaw, and the entire record herein, the Court shall deny the District's [342] Motion to

Decertify the Class, and shall order that this action continue as a class action, with the class

defined as:

> All persons who received disability compensation benefits pursuant to D.C. Code
> § 1-623.1, *et seq.* and whose benefits were terminated, suspended or reduced
> between June 27, 1998 and April 5, 2005, the date on which the Disability
> Compensation Effective Administration Amendment Act of 2004, D.C. Act 15-
> 685, 52 D.C. Reg. 1449 (Jan. 4, 2005), took effect. "Disability compensation
> benefits" is defined to exclude a scheduled award provided in D.C. Code § 1-
> 623.7 expiring at the end of the statutory term, continuation of pay provided in

D.C. Code § 1-623.18(a) expiring at the end of the statutory term, funeral expenses provided in D.C. Code § 1-623.34, a fully paid lump sum settlement provided in D.C. Code § 1-623.35, and credited compensation leave provided in D.C. Code § 1-623.43.

In addition, the Court shall order discovery to continue on Plaintiffs' sole remaining claim–Claim Two–which alleges that, as Title 23 of the District's Comprehensive Merit Personnel Act of 1978 ("CMPA") was applied prior to April 5, 2005, Defendants[1] modified, suspended, or terminated class members' disability compensation benefits "without affording beneficiaries adequate and timely notice and opportunity to demonstrate a continuing entitlement to benefits in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution."  Third Am. Compl. ("TAC") ¶ 134.

## I: BACKGROUND

This case has been the subject of numerous opinions and orders of this Court as well as of the Court of Appeals for the District of Columbia Circuit.  As such, the Court shall recite herein only those facts that are relevant to the Motion to Decertify currently before the Court and shall assume familiarity with the factual background of this case.[2]

---

[1] In addition to the District and a number of District officials, Plaintiffs bring suit against CLW/Creative Disability Management ("CLW/CDM"), a private third party administrator to whom the administration of the District's disability compensation program was contracted out during the class period.  TAC ¶ 1.  While still a party to the litigation, CLW/CDM has taken no position with respect to the issues addressed in this opinion.

[2] For a detailed discussion of the factual background of this case, *see Lightfoot v. District of Columbia*, 339 F. Supp. 2d 78, 80-87 (D.D.C. 2004) (granting summary judgment as to Claims Six ans Seven of TAC), *rev'd on appeal*, 448 F.3d 392 (D.C. Cir. 2006) (hereinafter "*Lightfoot*"); *see also Lightfoot v. District of Columbia*, 448 F.3d 392, 394-95 (D.C. Cir. 2006) (hereinafter "*Lightfoot Appeal*"); *Lightfoot v. District of Columbia*, Civil Action No. 01-1484, Mem. Op. (D.D.C. Jan. 16, 2007), Docket No. [316] (granting motion to dismiss Claims Three through Seven of TAC) (hereinafter "Jan. 16, 2007 Opinion."); *Lightfoot v. District of Columbia*, Civil Action No. 01-1484, Mem. Op. (D.D.C. Apr. 10, 2007), Docket No. [330] (granting motion

Plaintiffs, a class of former District of Columbia employees, challenge the policies and procedures applied to terminate, suspend, and modify their disability compensation benefits pursuant to the CMPA.  The Court initially certified the class in this action on January 14, 2004 pursuant to Federal Rule of Civil Procedure 23(b)(2), and defined the class as

> All persons who have received or will receive disability compensation benefits pursuant to D.C. Code § 1-623.1, *et seq*., and whose benefits have been terminated, suspended or reduced since June 27, 1998 or whose benefits will be terminated, suspended or reduced in the future.  "Disability compensation benefits" is defined to exclude a scheduled award provided in D.C. Code § 1-623.7 expiring at the end of the statutory term, continuation of pay provided in D.C. Code § 1-623.18(a) expiring at the end of the statutory term, funeral expenses provided in D.C. Code § 1-623.34, a fully paid lump sum settlement provided in D.C. Code § 1-623.35, and credited compensation leave provided in D.C. Code § 1-623.43.

*See* Order, Jan. 14, 2004, Docket No. [153]; *see also Lightfoot v. District of Columbia*, Civil Action No. 01-1484, Mem. Op. (D.D.C. Jan. 14, 2004), Docket No. [154] (hereinafter "Class Cert. Opinion").  At the time of the class certification, Plaintiffs' case included eight claims, however those claims have been whittled down significantly by subsequent events.  Specifically, in its September 24, 2004 Memorandum Opinion and Order, this Court granted Plaintiffs' motion for partial summary judgment as to Claims Six and Seven.  *See generally Lightfoot*, 339 F. Supp. 2d 78.  On appeal, the D.C. Circuit reversed the grant of summary judgment as to Claim Six, and remanded Claim Seven to this Court for reconsideration of this Court's decision to exercise supplemental jurisdiction over that claim.  *Lightfoot Appeal*, 338 F.3d at 397-99.[3]

---

to dismiss Claim One of TAC) (hereinafter "Apr. 10, 2007 Opinion").

[3] In addition to the *per curiam* opinion, Judge Laurence H. Silberman filed a concurring opinion in which he wrote "separately to comment more fully on [this Court's] disposition of claim six."  *Lightfoot Appeal*, 448 F.3d at 399.

On remand, the District moved to dismiss Claims One, Three, Four, and Five of the Third

Amended Complaint.  The Court granted the District's motion to dismiss as to Claims Three,

Four, and Five in its January 16, 2007 Memorandum Opinion, in which it also declined to

exercise supplemental jurisdiction over, and thus dismissed, Claim Seven.  *See generally* Jan. 16,

2007 Opinion.  The Court granted the District's motion to dismiss as to Claim One in its April

10, 2007 Memorandum Opinion.  *See generally* Apr. 10, 2007 Opinion.  As a result, Plaintiffs'

sole remaining claim is Claim Two, in which Plaintiffs allege that, as the CMPA was applied,

Defendants modified, suspended, or terminated class members' disability compensation benefits

"without affording beneficiaries adequate and timely notice and opportunity to demonstrate a

continuing entitlement to benefits in violation of the Due Process Clause of the Fifth Amendment

to the United States Constitution."  TAC ¶ 134.  The District's pending Motion to Decertify

argues that Claim Two does not meet the requirements of Federal Rule of Civil Procedure 23,

and that the class should be decertified as a result.  Defs.' Mem. of P. & A. in Support of Their

Mot. to Decert. the Class (hereinafter "Dist. Mem.") at 3.

While the District's Motion to Decertify reflects the changed circumstances since the

Court initially certified the class, the District admits that its Motion to Decertify was spurred by

issues related to discovery regarding Claim Two.  In connection with the Court's grant of

summary judgment as to Claims Six and Seven, the Court ordered Plaintiffs' disability

compensation benefits reinstated.  *See Lightfoot*, 339 F. Supp. 2d at 96.  To that end, in April

2005, Magistrate Judge John M. Facciola and this Court both ordered Defendants to provide

Plaintiffs with (1) the identification of all class members, and (2) verification of the last known

address for each class member.  *See* Order, Apr. 11, 2005, Docket No. [227]; Order, Apr. 26,

4

2005, Docket No. [230].  The District engaged an outside contractor tasked with compiling a list

of class members.  *See* Dist. Mot. to Stay Disc. on Claim Two, Docket No. [312], at 4.  After

eliminating duplicates in the list created by the outside contractor, in June 2005 the District

provided Plaintiffs with a list of 5,052 class members.  *Id.*  Thereafter the District determined

that the initial list was substantially over-inclusive, and reduced the number of class members to

568.  *Id.*  For their part, Plaintiffs asserted at the time–and continue to maintain–that each of the

lists produced by the District is both over- and under-inclusive.  *See* Pls.' Opp'n to Gov't Defs.'

Mot. to Stay Disc., Docket No. [313], at 5-6, n.3.

The D.C. Circuit decision terminated the District's obligation to reinstate Plaintiffs'

disability compensation benefits and made clear that Plaintiffs could not pursue prospective

injunctive relief after April 5, 2005 (the date on which amendments to the CMPA took effect).

*See Lightfoot Appeal*, 448 F.3d at 399.  On remand, the Court ordered the parties to continue

discovery on Claim Two while briefing the viability of the remaining claims in light of the D.C.

Circuit decision.  *See* Order, Oct. 12, 2006, Docket No. [301].[4]  The Court also referred the

resolution of discovery disputes to Magistrate Judge Facciola.  The parties' efforts at discovery

into Claim Two soon began to unravel due to disagreements over the composition of the class

list.  On December 29, 2006, the District proposed to conduct an audit of the class list and moved

to stay discovery on Claim Two pending clarification of the class definition (which still included

future class members) and the District's audit.  *See* Dist. Mot. to Stay Disc.  Plaintiffs

---

[4] Following the Court's dismissal of Claims Three and Four of Plaintiffs' Third Amended Complaint, the Court clarified that Plaintiffs could pursue discovery into the practices addressed in Claims Three and Four only insofar as those practices were relevant to Claim Two, Plaintiffs' as applied challenge to the CMPA.  *See* Order, Mar. 8, 2007, Docket No. [324].

subsequently proposed that rather than audit the seemingly deficient class lists, the parties

mutually engage in a sampling of a statistically significant number of class member case files, in

order to create a common factual predicate for assessing Claim Two. *See* Pls.' Status Report,

Apr. 11, 2007, Docket No. [331].  The parties agreed to Plaintiffs' proposed sampling and began

efforts to that end, including numerous discovery conferences with Magistrate Judge Facciola.

*Id.*  However, on April 3, 2007, the District determined that it would not participate in the

sampling process, believing that the process inappropriately shifted the burden of Plaintiffs'

discovery onto the District.  *See* Dist. Status Report, Apr. 12, 2007, Docket No. [332].  The

District informed the Court of this change in plans one day before the Court's scheduled status

hearing, and only in response to the Court's request for status reports prior to the hearing.

On April 13, 2007, the Court held a status hearing in this matter, following which the

Court redefined the class in order to reflect that only Claim Two remained in this action and that

Plaintiffs could not pursue prospective relief.  *See* Order, Apr. 17, 2007, Docket No. [333].  The

revised class definition includes:

> All persons who received disability compensation benefits pursuant to D.C. Code
> § 1-623.1, *et seq.* and whose benefits were terminated, suspended or reduced
> between June 27, 1998 and April 5, 2005, the date on which the Disability
> Compensation Effective Administration Amendment Act of 2004, D.C. Act 15-
> 685, 52 D.C. Reg. 1449 (Jan. 4, 2005), took effect.  "Disability compensation
> benefits" is defined to exclude a scheduled award provided in D.C. Code § 1-
> 623.7 expiring at the end of the statutory term, continuation of pay provided in
> D.C. Code § 1-623.18(a) expiring at the end of the statutory term, funeral
> expenses provided in D.C. Code § 1-623.34, a fully paid lump sum settlement
> provided in D.C. Code § 1-623.35, and credited compensation leave provided in
> D.C. Code § 1-623.43.

*Id.*  In addition, during the April 13, 2007 status hearing, the District did not dispute that it was

responsible for creating an accurate class list in response to Plaintiffs' discovery request, and was

unwilling to represent that an accurate list had been generated.  *See* Order, Apr. 17, 2007, Docket No. [334].  The Court therefore ordered the parties to confer with Magistrate Judge Facciola in order to devise a means of creating an accurate class list.  *Id.*

The District subsequently contested the Court's Order requiring it to compile an accurate class list.  *See* Defs.' Excepts. to Court's Apr. 17, 2007 Order, Apr. 26, 2007, Docket No. [335]. On May 10, 2007, Magistrate Judge Facciola issued an Order requiring the District to show cause why the court should not order the parties to collaborate in retaining an outside vendor capable of compiling an accurate class list and developing a statistically significant sample of the class records to be used as a factual predicate in addressing Claim Two.  *See* Order, May 10, 2007, Docket No. [338].  In response, the District filed their Motion to Decertify the Class, as well as a Response to Magistrate Judge Facciola's show cause Order, which relies in part upon the District's Motion to Decertify.  Plaintiffs filed their Opposition to the District's Motion to Decertify and a Response regarding the show cause Order on June 11, 2007; and on June 21, 2007, the District filed its Reply and further response to the show cause Order.  Subsequently, the Court ordered Plaintiffs to file additional briefing clarifying the nature of relief they seek in this action.  *See* Order, June 29, 2007, Docket No. [349].  Plaintiffs filed that brief on July 13, 2007, the District filed its responsive brief on August 2, 2007, and Plaintiffs filed their reply brief on August 9, 2007.  The District's Motion to Decertify is therefore now ripe for review.

## II: LEGAL STANDARDS

The District's Motion to Decertify argues that the class, as redefined in the Court's April 17, 2007 Order, is neither ascertainable nor consistent with Claim Two, and further argues that Claim Two does not satisfy the requirements of Federal Rule of Civil Procedure 23.

As the proponent of continued class certification, Plaintiffs have the burden of establishing that each of the requirements for class certification set forth in Federal Rule of Procedure 23 are met. *See Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Class certification requires that the elements of Rule 23(a) are met and that the class is maintainable pursuant to one of Rule 23(b)'s subdivisions. *Id.*; Fed. R. Civ. P. 23; *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 529 (D.C. Cir. 2006). The four prerequisites to a class action lawsuit under Rule 23(a) are: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a). These four requirements are referred to as numerosity, commonality, typicality, and adequacy of representation. In addition, Plaintiffs must demonstrate that the class is maintainable under Rule 23(b). In the instant case, the class was certified pursuant to Rule 23(b)(2), which requires a showing that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).

The Court will not–and cannot–make a preliminary inquiry into the merits of Plaintiffs' claim in determining whether class certification is proper. *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177 (1974); *Richards*, 453 F.3d at 531 n.5. Nevertheless, "the class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action'" and the Court is required to conduct a "rigorous analysis" of the Rule 23 requirements. *Gen. Tele. Co. of the SW v. Falcon*, 457 U.S. 147, 160-61 (1982) (quoting

8

*Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978)); *see also Richards*, 453 F.3d at 531 n.5.  Therefore, while the Court accepts the substantive allegations contained in Plaintiffs' Third Amended Complaint as true, *see Vitamins*, 209 F.R.D. at 257, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."  *Falcon*, 457 U.S. at 160-61; *see also McCarthy*, 741 F.2d at 1413 n.8.

### III: DISCUSSION

The District's Motion to Decertify calls upon the Court to examine the propriety of the class in this action for a third time.  In originally certifying the class in January 2004, the Court engaged in a complete Rule 23 analysis.  *See generally* Class Cert. Opinion.  Furthermore, in redefining the class on April 17, 2007, the Court again considered the contours of the plaintiff class.  As a result, Plaintiffs argue that the Court's April 17, 2007 redefinition is the law of the case, such that the Court should not revisit the issue of class certification.  Pls.' Opp'n to Gov't Defs.' Mot. to Decert. the Class (hereinafter "Pl.'s Opp'n) at 2-4.  The Court briefly addresses this argument before turning to the merits of the District's Motion to Decertify.

> A.    *Law of the Case*

When issues have been resolved at a prior stage in the litigation, courts generally decline to revisit these issues, based upon principles of judicial economy.  *See New York v. Microsoft*, 209 F. Supp. 2d 132, 141 (D.D.C. 2002) (Kollar-Kotelly, J.).  "The doctrine bars reconsideration of the court's explicit decisions, as well as those issues decided by necessary implication."  *Microsoft*, 209 F. Supp. 2d at 141 (citing *LaShawn A. v. Barry*, 87 F.3d 1389, 1394 (D.C. Cir. 1996) (en banc) ("The law-of-the-case doctrine, the Supreme Court said, turns 'on whether a court previously decide[d] upon a rule of law . . . not whether, or how well, it explained the

decision.'") (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)

(alteration in *Christianson*)).  There are two important considerations when dealing with the

"law-of-the-case doctrine."  First, the doctrine applies only where "an issue is . . . litigated and

decided . . . ."  *Nat'l Souvenir Ctr., Inc. v. Historic Figures, Inc.*, 728 F.2d 503, 510 n.3 (D.C.

Cir. 1984) (quotation omitted).  Second, "[l]aw of the case is a prudential rule rather than a

jurisdictional one; in the words of Justice Holmes, the doctrine 'merely expresses the practice of

courts generally to refuse to reopen what has been decided, not a limit to their power.'" *Crocker*

*v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739-40 (D.C. Cir. 1995)(quoting *Messenger v.*

*Anderson*, 225 U.S. 436, 444 (1912); citing *Arizona v. California*, 460 U.S. 605, 618 (1983)).

        In response to Plaintiffs' argument that the Court should not revisit the issue of class

certification, the District responds that its Motion is appropriate in light of the changed

circumstances since the Court initially certified the class.  *See* Dist. Mem. at 2-5.[5]  While the

District is correct that the Court's initial class certification decision explicitly considered Claims

that are no longer part of this case, *see generally* Class Cert. Opinion, it is equally true that–as

Plaintiffs stress–the Court has since considered the class definition and redefined it in light of the

changed circumstances.  The April 17, 2007 redefinition, however, was based on the District's

---

        [5] The District further argues that "class certification is conditional only, and, if it appears
through discovery that certification was improvidently granted, options such as decertification or
revised certification are always available to the district court."  Dist. Mem. at 3 (quoting *Singer v.
AT & T Corp.*, 185 F.R.D. 681, 685 (S.D. Fla. 1998)).  This statement accurately reflects Federal
Rule of Civil Procedure 23(c) prior to the 2003 amendments to the Rule; however those
amendments specifically deleted the provision that class certification "may be conditional."  *See*
Fed. R. Civ. P. 23 advisory committee notes re: 2003 amendments.  As currently framed, Rule
23(c)(1)(C) allows a court to alter or amend an order certifying a class before final judgment, and
the advisory committee notes explain that "[d]ecertification may be warranted after further
proceedings."  *Id.*

10

professed confusion about the definition's inclusion of future class members, *see* Dist. Mot. to Stay Disc. at 3-4, and was entered without the benefit of the full briefing now presented to the Court.  It is therefore not clear that the District's Motion to Decertify has been actually litigated and decided.  Moreover, Federal Rule of Civil Procedure 23(c)(1)(C) specifically provides that an order certifying a class "may be altered or amended before final judgment."  Fed. R. Civ. P. 23(c)(1)(C).  The District could certainly have moved to decertify the class at an earlier point following remand if it believed such action was appropriate.  Nevertheless, the Court concludes in its discretion that it is appropriate to consider the District's Motion to Decertify at this point in light of the changed circumstances of this case and based on the full briefing now before the Court.[6]

> B.    *The District's Motion to Decertify*

In considering the District's Motion to Decertify, the Court must reevaluate whether the class, as currently defined, continues to meet the requirements of Rule 23.  Before doing so, however, the Court addresses the District's argument that "this Court's rulings and the D.C. Circuit's decision have so dramatically changed the parameters of this case, that the "class" is no

---

[6] Indeed, courts in other jurisdictions have suggested that district courts have an affirmative duty to reassess class certification rulings as the case develops, and decertify a class or alter a certification decision if necessary in light of developments in the case.  *See Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999); *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 140 (3d Cir. 1998); *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983).  Although these cases date from before the 2003 amendments to Rule 23, some district courts have referred to such a duty since the amendments.  *See, e.g.*, *E. Maine Baptist Church v. Union Planters Bank, N.A.*, 244 F.R.D. 538 (E.D. Mo. 2007) ("The Court has an ongoing duty to assure that the class claims in this action are certifiable under Federal Rule 23.  This duty continues even after class certification.") (citing *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1145 (8th Cir. 1999); *Briggs v. Anderson*, 796 F.2d 1009, 1017 (8th Cir. 1986); *Hervey v. City of Little Rock*, 787 F.2d 1223, 1227 (8th Cir. 1986)).

longer ascertainable."  Dist. Mem. at 3.  While Federal Rule of Civil Procedure 23 does not

contain a requirement that a class be "ascertainable" or "clearly defined," such a requirement has

been "routinely require[d]" in order to "help the trial court manage the class."  *Pigford v.*

*Glickman*, 182 F.R.D. 341, 346 (D.D.C. 1998).

The District argues that "the current class definition is so broad as to practically guarantee

that the vast majority of putative class-members will have no claim at all."  Dist. Mem. at 4.

According to the District, this is true because the current class definition includes virtually every

recipient of disability compensation benefits during the class period and it would only be

possible for all of those individuals to have viable claims if the Court "accepts the conclusion

already rejected by the D.C. Circuit: that *any* downward adjustment to an employee's benefits

was *ipso facto* a due process violation."  *Id.* at 4-5.  The District's argument misunderstands the

very nature of Plaintiffs' allegations.  Specifically, Claim Two alleges that the CMPA, as applied,

failed to provide beneficiaries with adequate and timely notice and an opportunity to be heard

prior to the termination, suspension, or modification of their benefits.  TAC ¶ 134. Thus, as

Plaintiffs assert, they "have alleged and still contend that [all beneficiaries whose benefits were

terminated, suspended, or reduced during the class period] were subject to unconstitutional

procedures." *Id.* at 6.  Plaintiffs do not allege that all downward adjustments were *ipso facto* due

process violations, rather they allege that the District violated the Due Process Clause by failing

to provide class members with adequate notice and an opportunity to be heard before their

benefits were modified.  *Id.*  While the District may be correct that the class, as currently defined,

encompasses the vast majority of recipients of disability compensation benefits during the class

period, the breadth of the class alone does not make it unascertainable.[7] To the contrary, the

current class definition includes precisely those individuals that Plaintiffs maintain have viable

due process claims.

The Court therefore turns to the District's argument that the current class does not meet

the requirements of Federal Rule of Civil Procedure 23, addressing the requirements of Rule

23(a) before considering the requirements of Rule 23(b)(2).

      B.     *Rule 23(a) Requirements*

      1.     *Numerosity*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

impracticable." Fed. R. Civ. P. 23(a)1). The numerosity requirement "imposes no absolute

limitations," but rather "requires examination of the specific facts of each case." *Gen. Tele. Co.*

*of the NW v. EEOC*, 446 U.S. 318, 330 (1980). Courts in this District have generally found that

the numerosity requirement is satisfied and that joinder is impracticable where a proposed class

has at least forty members. *Bynum v. District of Columbia*, 214 F.R.D. 27, 32 (D.D.C. 2003);

*Thomas v. Christopher*, 169 F.R.D. 224, 237 (D.D.C. 1996), *aff'd in part and rev'd in part*, 139

F.3d 227 (D.C. Cir. 1998). A plaintiff need not provide the exact number of potential class

members to satisfy the requirement, so long as there is a reasonable basis for the estimate

provided. *Bynum*, 214 F.R.D. at 32-33; *Pigford*, 182 F.R.D. at 347. Finally, rule 23(a)(1) "gives

courts discretion to decide whether using the class action mechanism would serve the interests of

judicial economy and efficiency." *Int'l Union v. Clark*, Civil Action No. 02-1484 (GK), 2006

---

[7] In addition, Plaintiffs correctly note that the current class definition does not include all
recipients of disability compensation benefits during the class period because it excludes certain
types of benefits, including so-called "continuation of pay" coverage. Pls.' Opp'n at 4-5.

WL 2687005, *5 (D.D.C. Sept. 12, 2006) (citing *Council of and for the Blind of Delaware County Valley, Inc. v. Regan*, 709 F.2d 1521, 1544 n.8 (D.C. Cir. 1983) (Robinson, J., concurring in part and dissenting in part)).

Plaintiffs assert that the numerosity requirement is met in this case because the District's prior class lists include either 5,052 or 568 class members. Pls.' Opp'n at 12. In contrast, the District argues that "it cannot be presumed that there are more than a handful of employees whose claims fit within the narrow parameters of Claim Two." Dist. Mem. at 7. The District's argument, however, reflects a profound misunderstanding of the nature of Claim Two and what Plaintiffs will be required to prove in order to succeed on that claim. In his concurring opinion in the *Lightfoot Appeal*, Judge Silberman framed the issue raised by Claim Two as "whether, as a factual matter and prior to the recent amendment of the D.C. Code, beneficiaries, as a matter of policy and normal practice, were given an opportunity to present their case–at least in writing–prior to actual termination of their benefits." *Lightfoot Appeal*, 448 F.3d at 402. The District purports to recognize this framing of Claim Two, but clearly misses Judge Silberman's further caution that "episodic failures of process do not make out a constitutional violation," and that in evaluating due process claims under *Mathews v. Eldridge*, 424 U.S. 319 (1976), "we are to evaluate the run-of-the mine cases and not every application." *Lightfoot Appeal*, 448 F.3d at 402 (citing *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 321 (1985)).

In Claim Two, Plaintiffs allege that as the CMPA was applied during the class period, Defendants modified, suspended, or terminated class members' disability compensation benefits "without affording beneficiaries adequate and timely notice and opportunity to demonstrate a continuing entitlement to benefits in violation of the Due Process Clause of the Fifth Amendment

to the United States Constitution."  TAC ¶ 134.  As Judge Silberman's concurring opinion clarifies–and as Plaintiffs acknowledge–to establish liability on Claim Two, Plaintiffs will be required to prove that "as a matter of policy and normal practice," beneficiaries were not afforded adequate notice and opportunity to be heard before their benefits were modified.  Plaintiffs' evidence to this effect will presumably be based on a compilation of data regarding the process afforded various class members.  Nevertheless, to succeed on Claim Two Plaintiffs do not need to demonstrate that a particular individual was denied due process but rather that the class was denied due process across the board, i.e., to a statistically significant degree.  If, and only if, Plaintiffs are successful in this endeavor and the Court determines that "as a matter of policy and normal practice" the CMPA did not afford adequate due process, the Court can order an administrative review process be developed to determine what procedural protections an individual class member received.

The District's suggestion that Plaintiffs cannot meet the numerosity requirement because only a handful of class members were actually denied due process thus puts the cart before the horse.  Plaintiffs allege that *all* individuals whose disability compensation benefits were terminated, suspended, or reduced during the class period suffered a due process violation. Whether Plaintiffs can substantiate that allegation remains to be seen; however, for purposes of class certification, the question is how many individuals fall within the class as currently defined. The District has previously represented that there are either 5,052 or 568 class members.  Clearly either of these estimates demonstrates that the numerosity requirement is met.

The District also erroneously suggests that Plaintiffs cannot satisfy the numerosity requirement because certain categories of beneficiaries were not deprived due process, and

therefore must be excluded from the class at the outset.  Specifically, the District identifies:

> (1) All employees who were given the opportunity to seek reconsideration in writing and chose not to seek reconsideration within 30 days; (2) All employees who sought reconsideration and received a reconsideration decision prior to termination, reduction or suspension of benefits; (3) All employees who sought and received post-deprivation due process; (4) All employees who failed to provide requested documentation in support of their wage loss and/or medical benefit claims; (5) All employees whose claims were denied *ab initio*; and (6) All employees whose claims were terminated, suspended or reduced based on over-payments, fraud or abuse.

Dist. Mem. at 7.  As Plaintiffs note, individuals in Category 5, whose claims were denied *ab initio*, are not included in the class because they never actually received benefits.  Pls.' Opp'n at 8 n.7.  While Plaintiffs also suggest that individuals in Category 4, who failed to provide requested documentation, may also have never received benefits, it appears that the District may be referring to individuals who did not produce requested documentation in connection with the reconsideration process.  If so, the District's attempt to exclude individuals in Category 4 suffers from the same problem as Categories 1 through 3.  Excluding such individuals at the outset requires a legal determination that the post-deprivation process that the individuals received was sufficient to cure the allegedly deficient pre-deprivation process.  The District does not provide cases that support this claim,[8] and in any event the Court declines to make an improper merits-based legal determination in the context of this class certification analysis.  *Eisen*, 417 U.S. at

---

[8]  In support of this assertion, the District cites *Sosna v. Iowa*, 419 U.S. 393 (1975), *Indiana Employment Security Division v. Burney*, 409 U.S. 540 (1973), *Hagans v. Levine*, 415 U.S. 528, 543-45 (1974), and *Fusari v. Steinberg*, 419 U.S. 379 (1975), all of which predate *Mathews v. Eldridge*.  The District fails to provide pincites for most of these cases and, based on the Court's reading, they do not establish that post-deprivation process is all that was required in this instance.  At best, the cases cited by the District suggest that the length of time in which individuals were deprived of benefits is relevant to determining whether a due process violation occurred.

177.  Similarly, the Court declines to determine at this time whether individuals in Category 6,

whose claims were purportedly modified due to over-payments, fraud or abuse, lack pre-

deprivation due process rights as a matter of law.

> 2.      *Commonality*

Rule 23(a)(2) requires that there are questions of law or fact common to the class.  Fed.

R. Civ. P. 23(a)(2).  "The commonality test is met when there is at least one issue, the resolution

of which will affect all or a significant number of the putative class members."  *In re Lorazepam*

*& Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 26 (D.D.C. 2001) (quoting *Lightbourn v. County*

*of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997)); *see also Garcia v. Johanns*, 444 F.3d 625, 631

(D.C. Cir. 2006).  Significantly, "factual variations among the class members will not defeat the

commonality requirement, so long as a single aspect or feature of the claim is common to all

proposed class members."  *Bynum*, 214 F.R.D. at 33.

The District argues that Plaintiffs cannot demonstrate continued commonality because

their "'as applied' theory of the case requires a case-by-case review to determine whether an

individual was denied pre-deprivation procedural due process and/or whether post-deprivation

procedural due process renders that individual's claim moot."  Dist. Mem. at 8.  This argument

fails, however, for reasons discussed in connection with the numerosity requirement.

Determining whether post-deprivation due process cures an alleged pre-deprivation denial of due

process calls for a merits-based legal inquiry that is inappropriate at this stage.  More

significantly, however, to prevail on Claim Two Plaintiffs do not need to demonstrate that

particular individuals were deprived due process but rather that, as applied to the class as a

whole, the CMPA did not afford adequate due process.[9]  The issues to be resolved in connection

with Claim Two are what policies and practices the District actually applied across the board

during the class period, and whether those policies and practices are sufficient under *Mathews v.*

*Eldridge*.[10]  As the Court concluded in originally certifying the class in this action, "all members

of the class will be affected by the resolution of the constitutionality of the District of Columbia's

disability benefits program," as it was applied during the class period.  Class Cert. Opinion at 8.

The Court therefore concludes that the commonality requirement continues to be met.

       *3.*     *Typicality*

      Rule 23(a)(3) requires a finding that "the claims or defenses of the representative parties

_____

   [9] The District also appears to suggest that decertification is required because "[a]bsent an examination of a worker's entire file and payment history, the notification forms upon which Plaintiffs rely for their proof have little probative value in discerning Defendants' Workers Compensation Program's policy and practice."  Dist. Reply at 6-8.  To this end, the District offers a chart comparing the conclusions regarding certain named Plaintiffs' benefits that one might draw from a review of only the relevant notification forms and the conclusions one might draw from the Plaintiff's complete case file.  *Id.* at 7-8.  Although the District does not support the assertions made in the chart with documentary evidence, the chart raises significant questions as to whether the notification forms, alone, can accurately establish the District's policies and practices during the class period.  Such questions, however, go to Plaintiffs' ability to prove their case, the methods Plaintiffs will pursue in doing so, and the District's potential defenses.  The Court declines to conclude that Plaintiffs cannot prove their case, simply because the District suggests that they may face significant challenges in doing so.  Furthermore, the Court may not, and does not, assess the merits of Plaintiffs' claims in the context of this class certification analysis.

   [10] The Court notes the potentially insurmountable obstacle posed by the District's argument that class treatment is inappropriate in this instance because Plaintiffs' as applied claim requires case-by-case inquiries.  Specifically, it appears unlikely that any individual litigant could shoulder the burden of proving that, as a matter of policy and practice, the application of the CMPA deprived beneficiaries of due process; however, any prospective litigant could not succeed without making just that showing.  *See Lightfoot Appeal*, 448 F.3d at 402.  As a result, the District's argument that this action may only proceed on an individual basis would likely be the death knell of this litigation.

are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality

requirement aims at ensuring "that the class representatives have suffered injuries in the same

general fashion as absent class members." *In re Vitamins Antitrust Litigation*, 209 F.R.D. 251,

260 (D.D.C. 2002) (quoting *Thomas v. Albright*, 139 F.3d 227, 238 (D.C. Cir. 1998)). The facts

and claims of each class member do not have to be identical to support a finding of typicality, *see*

*Thomas*, 139 F.3d at 238, rather "[t]ypicality refers to the nature of the claims of the

representative, not the individual characteristics of the plaintiff," *In re Cardizem CD Antitrust*

*Litig.*, 200 F.R.D. 297, 304 (E.D. Mich. 2001). The typicality requirement is satisfied "if each

class member's claim arises from the same course of events that led to the claims of the

representative parties and each class member makes similar legal arguments to prove the

defendant's liability." *Lorazepam*, 202 F.R.D. at 27 (quoting *Pigford*, 182 F.R.D. at 349).

The District argues that Plaintiffs cannot demonstrate that they are typical of absent class

members because "it is not clear whether any [of them] received post-deprivation procedural due

process that would moot any pre-deprivation denial of due process." Dist. Mem. at 9. The Court

again declines to determine in the context of this class certification analysis that, as a matter of

law, post-deprivation process cures a potential pre-deprivation due process violation. Moreover,

Plaintiffs' class-wide allegation is that, regardless of the post-deprivation process they received,

individuals were deprived due process because they were not afforded adequate pre-deprivation

notice and an opportunity to be heard. Thus, a particular named Plaintiff's typicality is not

destroyed by an assertion that he or she received post-deprivation process.

Plaintiff Elizabeth Lightfoot alleges that her benefits were twice terminated or reduced,

but then restored following an appeal. TAC ¶¶ 50-56. Plaintiff Lightfoot further alleges that on

or about March 6, 2001 she received a Final Order of Denial terminating her benefits effective

March 11, 2001 and that, although she appealed the Final Order on or about March 19, 2001, she

was afforded no opportunity to present evidence or argument prior to the termination. *Id.* ¶¶ 58,

60.  Plaintiff Lightfoot alleges that her claim to continuing medical benefits was restored at a

subsequent hearing, but that she passed away before a final decision was reached on her appeal of

the termination of her wage loss benefits. *Id.* ¶¶ 61-64.  The District acknowledges that "it is

unclear whether Plaintiff Lightfoot was denied pre-deprivation due process," but asserts that "any

possible deprivation was cured by post-deprivation process" such that Plaintiff Lightfoot does

not have a claim.  Dist. Mem. at 10.  As set forth above, however, Plaintiff Lightfoot's

allegations that her benefits were terminated with only five days notice and that she had no

opportunity to present evidence prior to the termination are sufficient to make her typical of the

absent class members with respect to Claim Two.

 Plaintiff Lawrence Myers' claim is likewise typical of the absent class members.  Plaintiff

Myers alleges that on March 20, 2002, he was issued a form DCP-5 Final Termination Order

stating that his benefits would cease effective March 11, 2002, i.e., prior to the date of the notice.

TAC ¶ 108.  Plaintiff Myers alleges that he received no benefits after March 11, 2002 and that he

was not afforded an opportunity to demonstrate a continuing entitlement to benefits, but was only

offered an opportunity to seek post-deprivation reconsideration. *Id.* ¶ 109.  Plaintiff Myers

alleges that he sought and received reconsideration review and a final hearing. *Id.* ¶ 110-11.

Although the District asserts that this post-deprivation process may exterminate Plaintiff Myers'

claim, this argument fails for the reasons discussed above.  Plaintiff Myers is therefore typical of

the absent class members.

Similarly, Plaintiff Germaine Lee-Williams (now Germaine Lee-Robinson) may have a claim typical of absentee class members.[11]   Plaintiff Lee-Williams received a "Notice of Determination by Examiner" dated June 30, 1999, alerting her that her disability compensation benefits were terminated because an independent medical examiner had determined that she was fit to return to work.   TAC ¶¶ 84-85.   Plaintiff Lee-Williams alleges that her disability and medical benefits were terminated on or about June 30, 1999, and that she was not afforded an opportunity to present evidence or argument prior to termination.   *Id.* ¶¶ 84-86.   Upon further examination, it appears that Plaintiff Lee-Williams may have received medical benefits through September 30, 1999, although the Court notes that the payment on her behalf on that date was issued to the independent medical examiner.   Dist. Resp. to Ct.'s 10/25/07 Order (hereinafter "Dist. Resp.") at 2 ¶ 2, Ex. B (Lee-Williams BGO 1999 Report, indicating payment to Dr. Stephen Matz dated 9/30/99).   The record suggests that Plaintiff Lee-Williams received a final Temporary Total Disability ("TTD") benefit check dated July 23, 1999 for benefits between July 1, 1999 and July 17, 1999.   Dist. Resp. at 2 ¶ 2, Ex. B; Pls.' Resp to 10/25/07 Ct. Order (hereinafter "Pls.' Resp.") at 2-3.   However, Plaintiff Lee-Williams' disability benefits appear to have been effectively terminated on July 18, 1999, and it is possible that her final TTD check may have been recouped.   Pls.' Resp. at 2-3, Ex. 4 (Benefit Payment Worksheet requesting termination of benefits as of 7/18/99).   As such, the record indicates that Plaintiff Lee-Williams' TTD benefits (and perhaps her medical benefits) were terminated before she had the opportunity

---

[11] On October 25, 2007, the Court issued an Order requiring the parties to provide factual support for allegations and claims made regarding Plaintiffs Lee-Williams and Fishburne in the Third Amended Class Action Complaint and in the District's filings in connection with its Motion to Decertify.   The parties filed their Responses, as required, on November 8, 2007.

to present evidence, and within the thirty-day period during which she could request reconsideration.  Such a claim is typical of the claims of absentee class members.

The District nevertheless argues that Plaintiff Lee-Williams' claim does not satisfy Claim Two because her TTD benefits were eventually retroactively reinstated and she continues to receive TTD and medical benefits.  *See* Dist. Reply at 11.  The District is correct that Plaintiff Lee-Williams pursued various post-deprivation review procedures, that she received $82,280.62 in retroactive temporary total disability payments from September 12, 1999 to April 16, 2003, and that she continues to receive temporary total disability benefits to date.  Dist. Resp. at 2-3 ¶¶ 4-8; Exs. E-H.  However, for reasons discussed above, the fact that Plaintiff Lee-Williams received post-deprivation process does not necessarily extinguish her due process claim.  The record suggests that Plaintiff Lee-Williams' TTD benefits were terminated sometime between July 1 and July 23, 1999, and were reinstated as of September 12, 1999.  Plaintiff Lee-Williams therefore may be entitled to additional retroactive benefits for the period between July 1 or July 23, 1999 and September 12, 1999.  Of course, if Plaintiff Lee-Williams' retroactive reinstatement payment compensated her for all benefits to which she was entitled, her claims would not be typical of absentee class members.  The Court therefore assumes, for the time being, that Plaintiff Lee-Williams asserts claims typical of the class with respect to Claim Two, but may revisit that conclusion if necessary based on further evidence.

As to the remaining named Plaintiffs, however, the District raises a number of issues that suggest that they may not be proper class representatives because they have not "suffered injuries in the same general fashion as absent class members."  *Vitamins*, 209 F.R.D. at 260.  Most strikingly, the District presents evidence that Plaintiff Juanita Smith settled her claim to disability

benefits for the period from October 9, 2000 to August 14, 2002, the precise period as to which she alleges she is entitled to retroactive disability benefits. TAC ¶ 79. Ms. Smith signed a Settlement Agreement acknowledging that the District's liability to her "for benefits is finally determined for this period and can not be relitigated." Dist. Reply, Ex. 1 (5/14/03 Settlement Agreement). As she therefore cannot assert a claim typical of the absent class members, the Court shall decertify Ms. Smith as a class representative in the Order accompanying this Memorandum Opinion.

Plaintiff Jamal Rashad also appears to be an inappropriate class representative for purposes of Claim Two. Mr. Rashad alleges that he was ordered to undergo an Independent Medical Examination, which he objected to and therefore did not attend. TAC ¶ 114. Mr. Rashad alleges that his bi-weekly disability compensation checks were subsequently delayed, however, Mr. Rashad does not allege that his benefits were ever terminated, suspended, or reduced. *Id.* ¶¶ 112-19. In addition, Mr. Rashad alleges that although the CMPA requires Defendants to pay for medical expenses incurred as a result of injuries occurring while in the performance of duty, he has not been reimbursed for several thousand dollars worth of out-of-pocket medical expenses incurred since 1999. *Id.* ¶ 119. Because Mr. Rashad does not allege that he ever received medical benefits, he cannot claim that his medical benefits were terminated, reduced, or suspended without adequate pre-deprivation notice and an opportunity to be heard. As Mr. Rashad does not allege that he has suffered injuries in the same general manner as absent class members, the Court shall decertify him as a class representative in the accompanying Order.

Finally, Plaintiffs admit that Plaintiff Frank Fishburne's claim is not typical of absentee class members with respect to Claim Two. Mr. Fishburne alleges that his disability

compensation benefits were reduced via an undated DCP-5 form sometime after May 2001.

TAC ¶ 105.  In fact, Mr. Fishburne's benefits continued at the same level through September 6,

2003, at which point they were reduced.  Dist. Resp. at 3 ¶ 1, Ex. I (Fishburne Payment History).

In their Response to the Court's October 25, 2007 Order, Plaintiffs explain that Mr. Fishburne

was included as a named Plaintiff in the original Complaint because when that Complaint was

filed the instant action included claims for prospective injunctive relief.  Pls.' Resp. at 4-5.

According to Plaintiffs, Mr. Fishburne's claims were representative of those individuals "whose

benefits had not yet been terminated or reduced, but who were entitled to constitutionally sound

procedures if they were to be terminated or reduced in the future."  *Id.*  Clearly such a claim is no

longer appropriate in light of the substantial narrowing of Plaintiffs' claims and the unavailability

of prospective injunctive relief.

In addition, Plaintiffs assert that on or about September 24, 2002 Mr. Fishburne received

notice that his benefits were to be reduced effective September 22, 2002.  *Id.* at 5-6, Ex. 9.  In

reality, however, the District erroneously continued to pay Mr. Fishburne at the same level, and

did not begin recouping its overpayments until September 2003.  Pls.' Resp. at 5-6, Exs. 10-11.

Plaintiffs admit this overpayment occurred, but nevertheless assert that Mr. Fishburne may be a

proper class representative for Claim Two because the September 24, 2002 notice he received did

not afford him any pre-reduction process.  Pls.' Resp. at 6.  In contrast, Plaintiffs suggest that

"[i]f the court believes that the [District's overpayment] renders Mr. FIshburne's facts atypical,

he can be dropped as a class representative."  *Id.*  The Court accepts Plaintiffs' suggestion.  In

light of the fact that Mr. Fishburne's disability benefits were not *actually* reduced without notice

or opportunity to present evidence, the Court concludes that his claim is not typical of those of

absentee class members.  The Court shall therefore decertify Mr. Fishburne as a class representative in the accompanying Order.

The Court's decertification of Ms. Smith, Mr. Rashad, and Mr. Fishburne as class representatives does not change the fact that Plaintiffs Lightfoot and Myers assert claims that arise out of the same course of events that led to the claims of absent class members and that all class members, including Plaintiffs Lightfoot and Myers, make the same legal arguments to prove Defendants' liability.  *See Lorazepam*, 202 F.R.D. at 27.  As a result, the Court concludes that the typicality requirement is met.

### 4.    *Adequacy*

Rule 23(a)(4) requires a finding that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Two criteria for determining the adequacy of representation are generally recognized: (1) the named representative must not have antagonistic or competing interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel."  *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997) (internal quotation omitted).  The District's opening brief in support of its Motion to Decertify does not address the issue of adequacy.  In response to Plaintiffs' assertion that the District has therefore conceded the point, *see* Pls.' Opp'n at 11, the District "state[s] categorically that [it does] not concede that the representative plaintiffs will fairly and adequately protect the interests of the class," Dist. Reply at 5, n.3.  Again, however, the District presents no argument to this end.  As the Court initially determined in certifying the original class in this action, "a review of Plaintiffs' briefing provides a clear indication that they are represented by able counsel and do

25

not have a conflict of interest with the absentee members of the class."  Class Cert. Opinion at

10-11.  In the absence of any evidence to the contrary, the Court again concludes that the

adequacy requirement is met.

  C.  *Rule 23(b)(2) Requirements*

  Rule 23(b)(2) "permits class actions for declaratory or injunctive relief where 'the party

opposing the class has acted or refused to act on grounds generally applicable to the class.'"

*Amchem*, 117 S. Ct. at 2245 (quoting Fed. R. Civ. P. 23(b)(2)).  Under Rule 23(b)(2), "two

elements must exist: (1) the defendant's action or refusal to act must be generally applicable to

the class; and (2) plaintiff must seek final injunctive relief or corresponding declaratory relief on

behalf of the class."  *Disability Rights Council of Greater Washington v. Washington Metro.*

*Area Transit Auth.*, 239 F.R.D. 9, 28 (D.D.C. 2006) (internal quotation omitted).[12]  Plaintiffs

maintain that this class is appropriately certified pursuant to Rule 23(b)(2) because they allege

systemic violations of due process and because they seek the same relief they sought at the time

of the initial class certification, albeit not on a prospective basis.  *See generally* Pls.' Resp. to the

Court's June 29, 2007 Order Regarding Class Relief (hereinafter "Pls.' Resp.").

  Plaintiffs argue that Defendants "acted or refused to act on grounds generally applicable

to the class" because they applied a common set of unwritten policies and practices to all

individuals whose benefits were terminated, reduced, or suspended during the class period.  Pls.'

---

[12] Notwithstanding the fact that the Court initially certified the class in this action pursuant to Rule 23(b)(2), in its Motion to Decertify, the District argued that the elements of Rule 23(b)(3) could not be met in this case.  As noted above, the Court subsequently ordered Plaintiff to file supplemental briefing clarifying the nature of relief sought in this action, as well as the legal grounds for pursuing that relief in a Rule 23(b)(2) class action.  The applicability of Rule 23(b)(2) to this action is therefore addressed in the parties' briefing in response to the Court's June 29, 2007 Order.

Resp. at 2.[13]  Claim Two indeed falls within the ambit of Rule 23(b)(2) because, as properly framed above, it alleges that as a matter of policy and practice, the application of the CMPA did not afford class members adequate and timely notice and an opportunity to be heard prior to the modification, suspension, or termination of their benefits.  *Id.* ¶ 134.  To succeed, Plaintiffs must prove that the alleged due process violation occurred across the board.  It is therefore clear that Claim Two alleges that District "acted or refused to act on grounds generally applicable to the class."  Fed. R. Civ. P. 23(b)(2).

The District challenges this conclusion by again arguing that Plaintiffs' as applied challenge "cannot be asserted in a class action because it requires a case-by-case determination."  Dist. Relief Reply at 2.  This argument has been discussed at great length above and the Court would therefore decline to consider it again; however, the District pushes its argument even further in discussing the requirements of Rule 23(b)(2), and in so doing makes a grievously erroneous assumption.  Specifically, the District asserts that because Claims One and Three through Seven of Plaintiffs' Third Amended Complaint have been dismissed by this Court or the D.C. Circuit, "the District's policies, practices, and procedures must be presumed valid as applied generally to members of the class."  Dist. Relief Reply at 3.  To the contrary, no such presumption is warranted.

---

[13] The District correctly notes that in the *Lightfoot Appeal*, the D.C Circuit determined that the District's failure to adopt written and consistently applied standards, policies, and procedures governing the termination, suspension, and modification of benefits under the CMPA did not, itself, violate due process.  *See* Dist. Defs.' Reply Br. to Pl.'s Resp. (hereinafter "Dist. Relief Reply") at 3, n.1.  While Plaintiffs now describe Claim Two as involving a due process challenge to the "common set of unwritten policies and practices" applied during the class period, Pls.' Resp. at 2, the Court understands this description to be rhetoric rather than an assertion that Claims Two and Six are one in the same.

The D.C. Circuit expressly did not reach the merits of Claims One through Five. *See Lightfoot Appeal*, 448 F.3d at 396. In dismissing Claims Three through Five, this Court determined only that the alleged deficiencies in the notices received by beneficiaries and the reasoning engaged in by Defendants did not, in and of themselves, constitute due process violations. *See* Jan. 16, 2007 Opinion at 12-22. The Court dismissed Claim One–Plaintiffs' facial challenge to the CMPA–upon finding that Plaintiffs could not meet their "heavy burden" of establishing that no set of circumstances exist in which the CMPA would be valid, because on its face the CMPA did not preclude the District from providing beneficiaries with pre-deprivation notice and an opportunity to be heard. *See generally* Apr. 10, 2007 Opinion. Neither of those decisions drew any conclusions as to whether, *as actually applied*, the CMPA afforded beneficiaries adequate due process. Rather, each Memorandum Opinion specifically reiterated that Claim Two remained viable. *See* Jan. 16, 2007 Opinion at 14, 18, 22; Apr. 10, 2007 Opinion at 6-7, 12. As such, the District is clearly mistaken in suggesting that any presumption of validity applies to the District's policies and procedures in applying the CMPA. Plaintiffs therefore continue to have a viable claim that the District "acted or refused to act on grounds generally applicable to the class" insofar as the polices and practices applied in connection with the CMPA allegedly deprived class members of due process.

To maintain this class pursuant to Rule 23(b)(2), Plaintiffs must also establish that they seek "final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Plaintiffs have clarified the nature of the relief they seek with respect to Claim Two as follows:

First, Plaintiffs seek a declaratory judgment that [Defendants'] policies and

practices were unconstitutional.  Second, Plaintiffs seek injunctive relief closely
tailored to the unconstitutional policies applied to the class.  Specifically, because
the Plaintiff class did not receive adequate notices or an opportunity to respond
prior to the deprivation of their benefits, Plaintiffs will request an order affording
them that opportunity.  Class members who are interested in doing so should be
permitted to reopen their claims files, to be allowed to review them (with counsel,
if desired), to supplement those files with relevant medical and other documents
and argument, and to have an independent third party adjudicator determine
whether the decision to terminate, suspend or reduce benefits was correct.  Third,
Plaintiffs seek nominal damages for each member of the class subject to the
Defendants' unconstitutional policies and procedures.

Pls.' Resp. at 3-4.

The District argues that Plaintiffs cannot obtain the declaratory and injunctive relief they

seek pursuant to Rule 23(b)(2), and further claims that the relief available to Plaintiffs is

predominantly, if not exclusively, monetary, such that Rule 23(b)(2) certification is

inappropriate.  Dist. Relief Reply at 5-8.  As to Plaintiffs' claims for declaratory and injunctive

relief, the District asserts that "a retroactive declaration is not the sort of relief available under"

Rule 23.  *Id.* at 5.  The District bases this argument on the advisory committee notes to the Rule,

which explain that "[d]eclaratory relief 'corresponds' to injunctive relief when as a practical

matter it affords injunctive relief or serves as a basis for later injunctive relief," Fed. R. Civ. P.

23 advisory committee notes, 1966 amendment.  However, the District's conclusion does not

follow from the advisory committee notes.  If Plaintiffs prevail in proving Claim Two, the Court

could issue a declaration that the policies and practices employed by Defendants in applying the

CMPA did not comport with constitutional due process.  Such a declaration would "serve as a

basis" for the injunctive relief that Plaintiffs seek, and would therefore be appropriate under Rule

23(b)(2).

As to the injunctive relief itself, the District simply notes that Plaintiffs concede that they

cannot seek prospective relief after the date that the amendments to the CMPA took effect.  The

District ignores Plaintiffs' description of the actual injunctive relief they seek, namely an order

enjoining Defendants to create an administrative system for reviewing class members' files,

determining whether individual class members received adequate pre-deprivation due process,

and if not, allowing them the opportunity to have their claims reviewed with the benefit of due

process.  In connection with the original class certification, the Court previously determined that

this type of injunctive relief might be available to Plaintiffs if they were successful on their

claims.  *See* Class Cert. Op. at 12-13.  The Court does not, at this time, determine the precise

contours of the relief that might be available to Plaintiffs upon successful prosecution of Claim

Two.[14]  Rather the Court notes that insofar as Plaintiffs seek the creation of an administrative

system as a remedy for Claim Two, such system can only be created through injunctive relief.

Finally, the District argues that Plaintiffs cannot maintain this class action under Rule

23(b)(2) because the relief available to them is predominantly, if not exclusively, monetary.  Dist.

Relief Reply at 5-8.  As the Court noted in its original class certification decision, "[c]ourts have

generally permitted (b)(2) classes to recover monetary relief in addition to declaratory or

---

[14] The Court acknowledges that Plaintiffs' claims have been substantially limited since the time of the initial class certification decision and that, as a result, Plaintiffs can no longer pursue injunctive relief designed to remedy claims other than Claim Two.  Specifically, while Plaintiffs suggest that they would seek an order requiring the District to reconsider earlier modification decisions in light of newly presented evidence, such relief might be viewed as a more appropriate remedy to Claim Five, Plaintiffs' now-dismissed claim that Defendants failed to engage in reasoned decision-making in modifying class members benefits.  The Court reaches no conclusions as to the propriety of such relief as a remedy for Claim Two, but notes simply that the Court's recognition that Plaintiffs seek injunctive relief should not be construed as an approval of the precise relief sought.

injunctive relief, at least where the monetary relief does not predominate." Class Cert. Opinion

at 12-13 (citing *Eubanks v. Billington*, 110 F.3d 87, 92 (D.C. Cir. 1997); Fed. R. Civ. P. 23(b)(2)

advisory committee note ("The subdivision does not extend to cases in which the appropriate

final relief relates exclusively or predominantly to money damages.")). As an initial matter, in

light of the discussion above, the District is incorrect that neither declaratory nor injunctive relief

is available to Plaintiffs as a remedy for Claim Two. The District is similarly incorrect that

Plaintiffs' requests for monetary relief predominate in this case, for the precise reason expressed

in the Court's initial class certification decision. As the Court explained:

> Should Plaintiffs prevail and the Court order the declaratory and injunctive relief
> requested, it will fall to the District of Columbia and CLW, as the disability
> program's administrator, to develop procedures that address the claims of those
> class members whose disability benefits were improperly terminated, reduced or
> suspended. Plaintiffs' framing their request for "monetary relief" in this way
> means that should Plaintiffs prevail, the Court will have little to no involvement in
> the actual adjudication of each member's claim for monetary relief; Plaintiffs'
> monetary damages will be awarded through an administrative process.

*Id.* at 13.

The Court's prior analysis is equally applicable at this juncture because the primary relief

Plaintiffs seek with respect to Claim Two is the creation of an administrative process to review

class members' case files, relief that is injunctive in nature. In turn, if that administrative process

reveals that an individual class member was improperly deprived of benefits, Plaintiffs seek the

recovery of those monetary benefits. However, as the Court previously determined in granting

class certification, such a request for monetary relief does not predominate because it flows from

Plaintiffs' requested declaratory and injunctive relief. *Id.* (citing *Coleman v. Pension Benefit*

*Guaranty Corp.*, 196 F.R.D. 193, 199 (D.D.C. 2000)). Plaintiffs' requested monetary relief is

"equitable in nature because it seeks restitution, rather than damages, thus rendering it appropriate for certification under Rule 23(b)(2)." *Id.* (citing *Coleman*, 196 F.R.D. at 199 (citing *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 899 (7th Cir.1999))).

The Court therefore concludes that, notwithstanding the changed circumstances and the substantial limiting of the claims in this case since the Court's initial class certification, Plaintiffs may maintain this class action pursuant to Federal Rule of Civil Procedure 23(b)(2). The Court's original class certification decision clearly turned on consideration of the six other claims included in Plaintiffs' Third Amended Complaint, which are no longer viable. However, having again conducted the analysis required by Rule 23, the Court shall deny the District's Motion to Decertify the Class.

## IV: CONCLUSION

For the foregoing reasons, the Court shall deny the District's Motion to Decertify the Class. The Court shall order this action to continue as a class action, pursuant to the redefinition set forth in the Court's April 17, 2007 Order. In addition, the Court shall order discovery to continue as to Claim Two of Plaintiffs' Third Amended Complaint. An appropriate Order accompanies this Memorandum Opinion.

Date:   November 15, 2007

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge